| | |
|---|---|
| **HALE AND DORR LLP**<br>John J. Regan (Pro Hac Vice)<br>Donald R. Steinberg (Pro Hac Vice)<br>60 State Street<br>Boston, MA 02109<br>Telephone: (617) 526-6000<br>Facsimile: (617) 526-5000<br><br>**COOLEY GODWARD LLP**<br>Thomas J. Friel, Jr. (80065)<br>Kenneth B. Opplinger (219095)<br>One Maritime Plaza<br>20th Floor<br>San Francisco, CA 94111-3580<br>Telephone: (415) 693-2000<br>Facsimile: (415) 951-3699<br><br>Attorneys for Plaintiffs ATS Automation<br>Tooling Systems, Inc. and Thermal<br>Form & Function, LLC | **LEWIS BRISBOIS BISGAARD & SMITH LLP**<br>David E. Reynolds, SB# 72362<br>Kenneth D. Watnick, SB# 150936<br>James C. Tran, SB# 206483<br>221 North Figueroa Street, Suite 1200<br>Los Angeles, California 90012<br>Telephone: (213) 250-1800<br>Facsimile: (213) 250-7900<br><br>Attorneys for Defendants Foxconn Electronics, Inc., Foxconn International, Inc. and Hon Hai Precision Industry Co., Ltd. |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ATS AUTOMATION TOOLING SYSTEMS, INC. AND THERMAL FORM & FUNCTION, LLC,<br><br>Plaintiffs,<br><br>vs.<br><br>FOXCONN ELECTRONICS, INC., FOXCONN INTERNATIONAL, INC., HON HAI PRECISION INDUSTRY CO., LTD., AND DOES 1 THROUGH 10,<br><br>Defendants. | CASE NO.: C03-2648 PJH<br><br>(Assigned to the Honorable Phyllis J. Hamilton)<br><br>**JOINT CLAIM CONSTRUCTION AND PREHEARING STATEMENT PURSUANT TO PATENT LOCAL RULE 4-3**<br><br>Action Filed: June 5, 2003 |

Pursuant to Patent Local Rule 4-3 and the Court's Order Re: Remaining Unset Pretrial Dates, dated December 3, 2003, the parties to this Action, ATS Automation Tooling Systems, Inc. ("ATS"), and Thermal Form & Function, LLC ("TFF") (collectively the "plaintiffs"), and Foxconn Electronics, Inc. ("FEI"), Foxconn International, Inc. ("FII"), and Hon Hai Precision Industry Co., Ltd. ("Hon Hai") (collectively the "defendants"), submit this Joint Claim Construction and Prehearing Statement.

## I. CLAIM CONSTRUCTION

The parties attach, as Exhibit "A" hereto, a chart of six agreed-upon claim terms from U.S. Patent 5,494,098 (the "'098 patent") and their agreed-to constructions. The six terms on which the parties agree are: solid flat base, parallel, spaced, single continuous length of material, connected, and unconnected.

The parties attach, as Exhibit "B" hereto, a chart of five disputed claim terms and phrases from the '098 patent which they believe require the Court's construction. The parties set forth in Exhibit "B" the disputed claim terms/phrases, their proposed constructions, and the identification of evidence in support of their respective proposed constructions.[1] The five terms and phrases on which the parties disagree are: housing, extending/extends/extend, fins, channels, and plenum chamber.

### A. ANTICIPATED LENGTH OF TIME NECESSARY FOR THE CLAIM CONSTRUCTION HEARING

The plaintiffs estimate the length of time necessary for the claim construction hearing to be approximately half a day. The defendants anticipate that the length of time necessary for the claim construction hearing is two days.

---

[1] While the parties have conferred in good faith to arrive at this Joint Claim Construction and Prehearing Statement (including the claim terms in dispute, the parties' respective proposed constructions, and the support therefor), the parties mutually reserve the right to seek to ask the Court to construe additional terms or to offer additional evidence in support of their proposed claim constructions in light of information that may arise during claim construction discovery and briefing.

## II. OTHER ISSUES

In the course of the parties' discussions concerning this Joint Claim Construction and Prehearing Statement, it has become apparent to the plaintiffs that there may also be a dispute concerning the term "top wall". The plaintiffs raised this issue with the defendants during the parties' discussions in an effort to narrow or clarify the claim terms in dispute. To this end, the plaintiffs suggested that the parties ought to consider whether this term required construction and, if so, whether it would be appropriate for the parties to stipulate to a brief extension of the time to file the Joint Claim Construction and Prehearing Statement so that the issue could be addressed at this time and so as to avoid the need to construe additional terms at a later date.

The term "top wall" was not identified as a term in dispute in the parties' Preliminary Claim Construction statements, which were exchanged on February 18, 2004. The plaintiffs did not raise this issue during lengthy and multiple discussions of counsel which occurred between February 18, 2004 and March 11, 2004. At a final conference on Thursday, March 11, 2004, the plaintiffs raised this issue for the first time. The defendants did not believe there was sufficient time to address the term "top wall" under the circumstances.

Respectfully submitted:

Date: March 15, 2004

| ATS AUTOMATION TOOLING SYSTEMS, INC. and THERMAL FORM & FUNCTION, LLC | FOXCONN ELECTRONICS, INC., FOXCONN INTERNATIONAL, INC., and HON HAI PRECISION INDUSTRY CO., LTD. |
|---|---|
| By Their Attorneys | By Their Attorneys |
| By: /s/<br>COOLEY GODWARD LLP<br>Thomas J. Friel, Jr.<br>Kenneth B. Opplinger<br><br>HALE AND DORR LLP<br>John J. Regan<br>Donald R. Steinberg | By: /s/<br>LEWIS BRISBOIS BISGAARD & SMITH LLP<br>David Reynolds<br>Kenneth D. Watnick<br>James C. Tran |

# EXHIBIT "A"

# EXHIBIT "A": TERMS ON WHICH THE PARTIES AGREE AND CONSTRUCTION THEREOF

| TERM | AGREED TO CONSTRUCTION |
|---|---|
| solid flat base | the supporting part of a heat sink having an even surface and no internal cavity |
| parallel | projecting in the same direction and being generally equidistant |
| spaced | spatially separated |
| connected | joined or linked together |
| unconnected | not joined or linked together |
| single continuous length of material | an unbroken strip of material |

EXHIBIT "B"

**EXHIBIT "B": DISPUTED CLAIM TERMS, PROPOSED CONSTRUCTIONS, AND EVIDENCE IN SUPPORT THEREOF**

| TERM | PLAINTIFFS' CONSTRUCTION AND EVIDENCE | DEFENDANTS' CONSTRUCTION AND EVIDENCE |
|---|---|---|
| **housing**<br><br>"a **housing** which is fixed relative to said base, said **housing** having a top wall which is spaced from said base, and side walls which extend from said base to said top wall"<br><br>(Claims 1, 2, 7-9) | **PROPOSED CONSTRUCTION:** an enclosure<br><br>**DICTIONARY DEFINITION:** McGraw-Hill Dictionary of Scientific and Technical Terms Fifth Edition (1994) ([ENG] "A case or enclosure to cover and protect a structure or a mechanical device").<br><br>**INTRINSIC EVIDENCE:** Patent col. 3:54-58 ("A section of U-shaped aluminum or aluminum alloy channel material is placed on top of the fins in an inverted position so that the legs of the channel member overlap the side edges of the base **18** as shown in FIG. **4** to define the housing."); Patent col. 4:24-26 ("Clearly, minor changes may be made in the form and construction of this invention without departing from the material spirit thereof.").<br><br>**EXTRINSIC EVIDENCE:** Testimony of Professor Robert J. Moffat, who is expected to testify generally as to the use and meaning of the term in dispute in the art and specifically as to the correctness of the plaintiffs' proposed construction of such term. Professor Moffat's testimony will be based on his professional qualifications and experience, his review of the '098 patent and its file history, his review and knowledge of prior art, and his review of the above identified evidence. By agreement of the parties, the specific details of the testimony to be offered by the parties' respective experts concerning claim construction will be disclosed at a later mutually-acceptable date. | **CONSTRUCTION:**<br>an enclosure placed over the fins of the heat sink<br><br>**DICTIONARY/TREATISE:**<br>Webster's ("something that covers or protects, as a case or enclosure (as for a mechanical part or an instrument)")<br><br>**INTRINSIC EVIDENCE:**<br>'098 Patent **Figures 2, 4 and 5** (showing the housing (element 14) placed directly over the fins (element 20) to enclose the fins)<br><br>**'098 Patent – col. 2, ln. 64-col. 3, ln. 6** ("The housing 14 has an inverted U-shaped cross-sectional configuration and includes a top wall 22 and a pair of side walls 24 and 26.... The fins 20 are fixed at their lower ends to the base 18 and at their upper ends to the top wall 22."); **col. 3, lns. 14-16** ("The upper loops of the [fins 20] are fixed to the bottom surface of the top wall 22 of the housing"); **col. 3, lns. 54-58** (Explains that the housing is a U-shaped structure "placed on top of the fins in an inverted position."); **col. 3, lns. 60-63** (Explains that the housing, fins and base "are brazed or otherwise bonded, i.e. epoxy, together to form an integral unit.") (cont.) |

**Prosecution History – 1/23/95 Office action, Examiner's comments, p. 2** (Examiner states that prior art "show the claimed subject matter except that the shroud 41 does not contact the upper edges of the fins 33 to thereby define enclosed channels for cooling air."); **4/21/95 Response to Office action, pp. 6-7** (Distinguishes claimed heat sink by asserting that fins of prior art heat sink end at a point spaced from the top wall, whereas the claimed heat sink has "fins which extend from a base wall to a top wall to define a plurality of channels," resulting in channels that are "enclosed except for the end openings."); **9/15/95 Response to Office action, p. 3** ("The top wall of applicant's heat sink assembly... covers substantially the top ends of the fins to form with the base tubular ducts which extend from the aperture in the top wall to each end opening.")

**EXTRINSIC EVIDENCE:**
Defendants' expert witness, Professor Ralph Greif, will testify in support of the defendants' proposed construction based on his analysis and understanding of the patent, the patent's file wrapper, the prior art, the subject technology, and any other reasonably relevant material.

| extending | PROPOSED CONSTRUCTION: projecting in a direction | CONSTRUCTION: stretching in distance |
|---|---|---|
| "said fins **extending** from said base to said top wall" (Claims 1, 2, 7-9) | DICTIONARY DEFINITION OF 'EXTEND': Webster's Third New International Dictionary of English Language, Unabridged (1993) (5c: "to cause to project in one or more directions"). | DICTIONARY/TREATISE: Webster's (extend – "to stretch out in distance, space, or time: REACH") |
| | INTRINSIC EVIDENCE: Patent col. 2: 19-22 ("Airflow from the fan assembly extends from the opening in the top wall of the housing along the spaces between the fins and out through both end openings of the housing."); Patent col. 2:61-63 ("a plurality of spaced parallel fins **20** which are fixed to the top surface of the base and which extend upwardly from the base."); Patent col. 3: 30-32 ("A plurality of fan blades are fixed to the rotor **40** and extend radially from the rotor within the bore **38**."); Patent col. 4, lines 5-8 ("The heat sink **52** includes a solid base portion **54** and a plurality of spaced parallel fins **56** which extend upwardly from the upper surface of the base **54**."); Patent col. 4:24-26 ("Clearly, minor changes may be made in the form and construction of this invention without departing from the material spirit thereof"). | INTRINSIC EVIDENCE: '098 Patent Figures **1, 2, 4 and 5** (showing the fins 20 stretching in distance from the base to the top wall 22) '098 Patent – **col. 2, lns. 13-15** (fins are described as being fixed to the base and extending "from the upper flat surface of the base to the top wall of the housing"); **col. 2, ln. 64-col. 3, ln. 6** ("The fins 20 are fixed at their lower ends to the base 18 and at their upper ends to the top wall 22."); **col. 3, lns. 14-16** (The fins are fixed to the base and stretch to the top wall where "the upper loops of the [fins 20] are fixed to the bottom surface of the top wall 22 of the housing") |
| | EXTRINSIC EVIDENCE: Testimony of Professor Robert J. Moffat, who is expected to testify generally as to the use and meaning of the term in dispute in the art and specifically as to the correctness of the plaintiffs' proposed construction of such term. Professor Moffat's testimony will be based on | **Prosecution History** – 1/23/95 Office action, Examiner's comments, p. 2 (Examiner states that prior art "show the claimed subject matter except that the shroud 41 does not contact the upper edges of the fins 33 to thereby define enclosed channels for cooling air."); aperture in the top wall to each end opening.") (cont.) |

| | |
|---|---|
| his professional qualifications and experience, his review of the '098 patent and its file history, his review and knowledge of prior art, and his review of the above identified evidence. By agreement of the parties, the specific details of the testimony to be offered by the parties' respective experts concerning claim construction will be disclosed at a later mutually-acceptable date. | **4/21/95 Response to Office action, pp. 6-7** (Distinguishes claimed heat sink by asserting that fins of prior art heat sink end at a point spaced from the top wall, whereas the claimed heat sink has "fins which extend from a base wall to a top wall to define a plurality of channels," resulting in channels that are "enclosed except for the end openings."); **9/15/95 Response to Office action, p. 3** ("The top wall of applicant's heat sink assembly... covers substantially the top ends of the fins to form with the base tubular ducts which extend from the aperture in the top wall to each end opening.")<br><br>**EXTRINSIC EVIDENCE:**<br>Defendants' expert witness, Professor Ralph Greif, will testify in support of the defendants' proposed construction based on his analysis and understanding of the patent, the patent's file wrapper, the prior art, the subject technology, and any other reasonably relevant material. |

4831-9583-4880.1

| | |
|---|---|
| extends/extend<br><br>"side walls which **extend** from said base to said top wall" | PROPOSED CONSTRUCTION: project/projects in a direction<br><br>DICTIONARY DEFINITION OF 'EXTEND': Webster's Third New International Dictionary of English Language, Unabridged (1993) (5c: "to cause to project in one or more directions"). | CONSTRUCTION: stretches in distance<br><br>DICTIONARY/TREATISE:<br>Webster's (extend – "to stretch out in distance, space, or time: REACH") |
| "a plurality of channels which **extends** from said first end opening to said second end opening" (Claims 1, 2, 7-9) | INTRINSIC EVIDENCE: Patent col. 2: 19-22 ("Airflow from the fan assembly extends from the opening in the top wall of the housing along the spaces between the fins and out through both end openings of the housing."); Patent col. 2:61-63 ("a plurality of spaced parallel fins **20** which are fixed to the top surface of the base and which extend upwardly from the base."); Patent col. 3: 30-32 ("A plurality of fan blades are fixed to the rotor **40** and extend radially from the rotor within the bore **38**."); Patent col. 4, lines 5-8 ("The heat sink **52** includes a solid base portion **54** and a plurality of spaced parallel fins **56** which extend upwardly from the upper surface of the base **54**."); Patent col. 4:24-26 ("Clearly, minor changes may be made in the form and construction of this invention without departing from the material spirit thereof").<br><br>EXTRINSIC EVIDENCE: Testimony of Professor Robert J. Moffat, who is expected to testify generally as to the use and meaning of the term in dispute in the art and specifically as to the correctness of the plaintiffs' proposed construction of such term. Professor Moffat's testimony will be based on | INTRINSIC EVIDENCE:<br>'098 patent – col. 2, lns. 17-19 ("The fins extend from a first end opening at one end of the housing to a second end opening at the opposite end of the housing.")<br><br>Prosecution History – **4/21/95 Response to Office action, p. 6** (Asserts that, in the claimed heat sink "[t]he channels extend from an inlet opening at one end of the assembly to an outlet opening at the opposite end of the assembly," and that "[a]ir from the fan flows through the channels which are formed by the fins to both end openings."); **9/15/95 Response to Office action, p. 3** (Distinguishes over prior art by asserting that claimed heat sink has "tubular ducts" formed by the fins, base and top wall which extend "to each end opening.")<br><br>EXTRINSIC EVIDENCE:<br>Defendants' expert witness, Professor Ralph Greif, will testify in support of the defendants' proposed construction based on his analysis and understanding of the patent, the patent's file wrapper, the prior art, the subject technology, and any other reasonably relevant material. |

| | | |
|---|---|---|
| | his professional qualifications and experience, his review of the '098 patent and its file history, his review and knowledge of prior art, and his review of the above identified evidence. By agreement of the parties, the specific details of the testimony to be offered by the parties' respective experts concerning claim construction will be disclosed at a later mutually-acceptable date. | |
| **fins**<br><br>"a plurality of parallel spaced *fins* which are fixed to said base"<br><br>(Claims 1, 2, 7-9) | **PROPOSED CONSTRUCTION:** projections for increasing heat transfer from an object<br><br>**DICTIONARY DEFINITIONS:** The American Heritage College Dictionary Third Edition (1992) (2b: "A projecting vane for cooling, as on a radiator or an engine cylinder").<br><br>**INTRINSIC EVIDENCE:** Patent Fig. 4; Patent col 3:10-13 ("The fins **20** are preferably made from a single continuous sheet of heat conductive and heat dissipating material which is bent into a sinuous or serpentine configuration as shown in FIG. **4**."); Patent col. 3:49-52 ("The heat sink assembly **10** is constructed by folding a predetermined length of thermally conductive material such as aluminum, aluminum alloy or copper strip into the serpentine configuration shown in FIG. **4** to form the fins **20**."); Patent col 5:1-7 ("folding a length of sheet metal into a continuous serpentine configuration to define a fin assembly which has a plurality of spaced parallel fins, each of said fins being connected to a first adjacent fin by a first end loop at a first end of said fins and connected to a second adjacent fin by a second end loop at a second end of said fins which is opposite said first end"); Patent col. 4:24-26 ("Clearly, minor changes may be made in the form and construction of this invention without departing from the material spirit thereof."). | **CONSTRUCTION:**<br>flattened projections for increasing heat transfer from an object<br><br>**DICTIONARY/TREATISE:**<br>The Concise Oxford English Dictionary ("flattened projection for increasing heat transfer from an object")<br><br>**INTRINSIC EVIDENCE:**<br>'098 Patent **Figures 1, 2, 4 and 5** (showing the fins (element 20) as flattened projections)<br><br>'098 Patent – **col. 2, lns. 10-13** (describing the fins as formed by folding a sheet of heat conductive and heat dissipating material in a sinuous or serpentine configuration); **col. 2, lns. 49-52** (describing the fins as formed by folding an aluminum, aluminum alloy or copper strip into a serpentine configuration)<br><br>**EXTRINSIC EVIDENCE:**<br>Defendants' expert witness, Professor Ralph Greif, will testify in support of the defendants' proposed construction based on his analysis and understanding of the patent, the patent's file wrapper, the prior art, the subject technology, and any other reasonably relevant material. |

EXTRINSIC EVIDENCE: (1) Allan D. Kraus and Avram Bar-Cohen, Design and Analysis of Heat Sinks (1995), p. 15. ("In a heat-rejecting system for electronic equipment, the component to be temperature controlled is referred to as the prime surface, and the extended surface is often called either a cooler or a heat sink. ... The elements used to extend prime surfaces are referred to as fins, finned arrays or arrays of fins, and when the fin elements are conical or cylindrical, they may be referred to as spines, pins, or pegs."); (2) Testimony of Professor Robert J. Moffat, who is expected to testify generally as to the use and meaning of the term in dispute in the art and specifically as to the correctness of the plaintiffs' proposed construction of such term. Professor Moffat's testimony will be based on his professional qualifications and experience, his review of the '098 patent and its file history, his review and knowledge of prior art, and his review of the above identified evidence. By agreement of the parties, the specific details of the testimony to be offered by the parties' respective experts concerning claim construction will be disclosed at a later mutually-acceptable date.

| channels | PROPOSED CONSTRUCTION: a passage for air flow | CONSTRUCTION: an enclosed passage through which air moves |
|---|---|---|
| "said fins defining with said base and said top wall a plurality of **channels** which extends from said first end opening to said second end opening, the portions of said **channels** which lie beneath said aperture being open to said aperture" (Claims 1, 2, 7-9) | DICTIONARY DEFINITIONS Webster's Third New International Dictionary of English Language, Unabridged (1993) (1g: "a way, course, or direction of thought or action: a restricted path of movement"): The American Heritage College Dictionary Third Edition (1992) ("a course or passage through which something may move"). INTRINSIC EVIDENCE: Patent col. 4:50-53 ("a plurality of channels which extends from said first end opening to said second end opening, the portions of said channels which lie beneath said aperture being open to said aperture"); Patent col. 4:24-26 ("Clearly, minor changes may be made in the form and construction of this invention without departing from the material spirit thereof."). EXTRINSIC EVIDENCE: Testimony of Professor Robert J. Moffat, who is expected to testify generally as to the use and meaning of the term in dispute in the art and specifically as to the correctness of the plaintiffs' proposed construction of such term. Professor Moffat's testimony will be based on his professional qualifications and experience, his review of the '098 patent and its file history, his review of prior art, and his review of the above identified evidence. By agreement of the parties, the specific details of the testimony to be offered by the parties' respective experts concerning claim construction will be disclosed at a later mutually-acceptable date. | DICTIONARY/TREATISE: American Heritage ("a course or passage through which something may move"); Webster's ("a usually tubular enclosed passage") INTRINSIC EVIDENCE: '098 Patent Figures 2 and 4 (showing channels formed by base wall, fins and top wall, resulting in enclosed passages between fins.) '098 Patent – col. 2, lns. 13-15 (Fins "are fixed to the base and extend from the upper flat surface of the base to the top wall of the housing"); col. 3, lns. 4-6 ("The fins 20 are fixed at their lower ends to the base 18 and at their upper ends to the top wall 22."); col. 3, lns. 13-16 ("The bottom loops of the [fins] are fixed to the upper surface of the base 18. The upper loops of the [fins] are fixed to the bottom surface of the top wall 22 of the housing."); col. 3, lns. 54-58 (the housing is "placed on top of the fins in an inverted position."); col. 4, lns. 5-9 (Heat sink includes "fins 56 which extend upwardly from the upper surface of the base 54. The top plate 58 is brazed to the top edges of the fins 56 so that it is spaced from the base 54.") Prosecution History – 1/23/95 Office action, Examiner's comments, p. 2 ("[Prior art patent to] Raynor et al. show the claimed subject matter except that the shroud 41 does not contact the upper edges of the fins 33 to thereby define enclosed channels for cooling air.") extend from the aperture in the top wall to each end opening.") (cont.) |

**4/21/95 Response to Office action, pp. 6-7** (Distinguishes over prior art by asserting that fins of prior art heat sink end at a point spaced from the top wall, whereas the claimed heat sink has "fins which extend from a base wall to a top wall to define a plurality of channels," resulting in channels that are "enclosed except for the end openings."); **4/21/95 Response to Office action, p. 7** (Explains that the claimed heat sink incorporates the advantage of "enclosed channels to provide maximum airflow between the fins" taught by prior art.); **9/15/95 Response to Office action, p. 3** ("The top wall of applicant's heat sink assembly... covers substantially the top ends of the fins to form with the base tubular ducts which extend from the aperture in the top wall to each end opening.")

**EXTRINSIC EVIDENCE:**
Defendants' expert witness, Professor Ralph Greif, will testify in support of the defendants' proposed construction based on his analysis and understanding of the patent, the patent's file wrapper, the prior art, the subject technology, and any other reasonably relevant material.

| plenum chamber | PROPOSED CONSTRUCTION: a space for distribution of air | CONSTRUCTION: an enclosed space in which air is at a pressure greater than that of the outside atmosphere |
|---|---|---|
| "said fan blade being spaced from the fins so as to define a **plenum chamber** between said blade and said fins." (Claims 7 and 8) | DICTIONARY DEFINITION OF PLENUM CHAMBER: McGraw-Hill Dictionary of Scientific and Technical Terms Fifth Edition (1994) [[ENG] "An enclosed space in which a plenum condition exists; air is forced into it for slow distribution through ducts.").<br><br>INTRINSIC EVIDENCE: Patent col. 2:22-25 ("the portions of the upper ends of the fins which are just below the aperture are spaced from the top wall of the housing to define a plenum chamber beneath the fan assembly."); Patent col. 3:6-10 ("In addition, the upper ends of the portions of the fins **20** which are vertically aligned with the opening **28** are spaced from the top wall **22** and define a plenum chamber **34** below the opening **28**."); Patent col. 3:16-21 ("The portions of the top loops of the fin material which are located directly below the opening **28** are severed. The upper ends of the severed portions of the fins are located in a horizontal plane which is spaced below the horizontal plane of the bottom surface of the top wall **22**, as shown in FIGS. **4** and **5**, to form the plenum chamber **34**."); Patent col. 3:63-65 ("The top portions of the fins **20** which are vertically aligned with the opening **28** are then milled to form the plenum chamber **34**."); Patent col. 4:12-16 ("The upper portions of the fins **56** which lie beneath the circular opening **60** are milled to a level which is below the bottom surface of the top plate **58**. This creates a plenum chamber **62** beneath the fan assembly **16** when the fan assembly is mounted to the top plate **58**."). | DICTIONARY/TREATISE: American Heritage (plenum – "A condition, space, or enclosure in which air or other gas is at a pressure greater than that of the outside atmosphere"; chamber – "An enclosed space or compartment: a compression chamber"); Webster's (plenum – "a condition in which the pressure of the air in an enclosed space is greater than that of the outside atmosphere; an enclosed space in which such a condition exists"; chamber – "enclosed space or cavity")<br><br>INTRINSIC EVIDENCE: '098 Patent – col. 3, lns. 40-41 ("Pressurized air from the fan enters plenum chamber **34**."); col. 4, lns. 18-19 ("Super atmospheric air from the fan enters plenum chamber **62**.")<br><br>EXTRINSIC EVIDENCE: Defendants' expert witness, Professor Ralph Greif, will testify in support of the defendants' proposed construction based on his analysis and understanding of the patent, the patent's file wrapper, the prior art, the subject technology, and any other reasonably relevant material. |

| | EXTRINSIC EVIDENCE: Testimony of Professor Robert J. Moffat, who is expected to testify generally as to the use and meaning of the term in dispute in the art and specifically as to the correctness of the plaintiffs' proposed construction of such term. Professor Moffat's testimony will be based on his professional qualifications and experience, his review of the '098 patent and its file history, his review and knowledge of prior art, and his review of the above identified evidence. By agreement of the parties, the specific details of the testimony to be offered by the parties' respective experts concerning claim construction will be disclosed at a later mutually-acceptable date. |