1    ALSCHULER GROSSMAN STEIN & KAHAN LLP
2    Terry D. Garnett (No. 151212)
     Vincent K. Yip (No. 170665)
3    Peter J. Wied (No. 198475)
     Jay C. Chiu (No. 205385)
4    The Water Garden
     1620 26th Street
5    Fourth Floor, North Tower
     Santa Monica, CA  90404-4060
6    Telephone: 310-907-1000
     Facsimile:  310-907-2000
7
8    Attorneys for Defendants
     Foxconn Electronics, Inc., Foxconn Technology Co.,
9    Ltd., and Hon Hai Precision Industry Co., Ltd.

10                  UNITED STATES DISTRICT COURT

11                      NORTHERN DISTRICT

12                    SAN FRANCISCO DIVISION

13

14   ATS AUTOMATION TOOLING              CASE NO. C03-2648 PJH
     SYSTEM, INC. AND THERMAL FORM
15   & FUNCTION LLC,                     **NOTICE OF MOTION AND MOTION**
                                         **FOR SUMMARY JUDGMENT;**
16              Plaintiffs,              **MEMORANDUM OF POINTS AND**
                                         **AUTHORITIES**
17        vs.

18   FOXCONN ELECTRONICS, INC.,          Date:      March 9, 2005
     FOXCONN TECHNOLOGY CO., LTD.,       Time:      9:00 a.m.
19   HON HAI PRECISION INDUSTRY CO.,     Judge:     Hon. Phyllis J. Hamilton
     LTD., and DOES 1 THROUGH 10,
20
                Defendants.
21

22

23
                       **REDACTED VERSION**
24

25

26

27

28

**Page**

INTRODUCTION ................................................................................................................ 2

LEGAL STANDARD ........................................................................................................ 2

FACTUAL BACKGROUND .............................................................................................. 4

    A.    The '098 Patent ............................................................................................ 4

    B.    The Accused Products ................................................................................. 4

PLAINTIFFS ARE NOT ENTITLED TO LOST PROFITS ............................................ 5

THE ASSERTED CLAIMS OF THE '098 PATENT ARE INVALID ............................. 6

    A.    Claim 1 of the '098 Patent is Invalid ........................................................ 6

           1.    Claim 1 is Anticipated by Yuan ................................................... 6

           2.    Claim 1 is anticipated by Lee ....................................................... 7

    B.    Claim 2 of the '098 Patent is Invalid ........................................................ 8

           1.    Claim 2 is anticipated by Yuan .................................................... 8

           2.    Claim 2 is anticipated by Lee ....................................................... 9

    C.    Claim 7 of the '098 Patent is Invalid ........................................................ 9

           1.    Claim 7 is anticipated or rendered obvious by Yuan ................... 9

           2.    Claim 7 is anticipated or rendered obvious by Lee ...................... 9

    D.    Claim 8 of the '098 Patent is Invalid ...................................................... 10

           1.    Claim 8 is rendered obvious by Yuan or Lee ............................. 10

    E.    Claim 9 of the '098 Patent is Invalid ...................................................... 10

           1.    Claim 9 is rendered obvious by Tanaka ...................................... 10

           2.    Claim 9 is rendered obvious by Lee ........................................... 12

THE ACCUSED PRODUCTS DO NOT INFRINGE THE ASSERTED CLAIMS .................. 12

    A.    The Accused Products do not have a Housing Fixed to the Base ......................... 12

    B.    The Accused Products do not have a Housing with Side Walls ......................... 13

    C.    Heatsink Models '003, '329 and '369 do not have Fins Extending from the Base to the Top Wall ................................................................................ 14

    D.    Heatsink Models '003, '329 and '369 do not have the Claimed Channels .......... 15

    E.    The Accused Products do not have Continuous Fins ........................................... 17

CONCLUSION ................................................................................................................ 17

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Anderson v. Liberty Lobby*, Inc.
477 U.S. 242 (1986).................................................................................. 2

*Beckson Marine, Inc. v. NFM, Inc.*
292 F.3d 718 (Fed. Cir. 2002)................................................................. 3

*Celotex Corp. v. Catrett*
477 U.S. 317 (1986).................................................................................. 3

*Crystal Semiconductor Corp. v. Tritech Microelecs. Int'l, Inc.*
246 F.3d 1336 (Fed. Cir. 2001)............................................................... 5

*In re Cruciferous Sprout Litigation*
301 F.3d 1343 (Fed. Cir. 2002)............................................................... 3

*Kegel Co. v. AMF Bowling*
127 F.3d 1420 (Fed. Cir. 1997)............................................................... 4

*Micro Chemical, Inc. v. Lextron, Inc.*
318 F.3d 1119 (Fed. Cir. 2003)............................................................... 5

*Novartis Corp. v. Ben Venue Labs.*
271 F.3d 1043 (Fed. Cir. 2001)............................................................... 3

*Rite-Hite Corp. v. Kelley Co.*
56 F.3d 1538 (Fed. Cir. 1995)................................................................. 6

*Rotec Indus. v. Mitsubishi Corp.*
215 F.3d 1246 (Fed. Cir., 2000).............................................................. 5

*Techsearch L.L.C. v. Intel Corp.*
286 F.3d 1360 (Fed. Cir. 2002)............................................................... 3

*Telemac Cellular Corp. v. Topp Telecom, Inc.*
247 F.3d 1316 (Fed. Cir. 2001)............................................................... 3

*Wahpeton Canvas Co. v. Frontier, Inc.*
870 F.2d 1546 (Fed. Cir. 1989)............................................................... 13

## FEDERAL STATUTES

35 U.S.C. § 102(b) .................................................................................... 3

35 U.S.C. § 103 ......................................................................................... 3

35 U.S.C. §102 .......................................................................................... 7

Fed. R. Civ. P. 56(c).................................................................................. 2

## OTHER AUTHORITIES

Webster's II New College Dictionary (2001) ........................................... 13

**NOTICE OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

TO PLAINTIFF ATS AUTOMATION TOOLING SYSTEM, INC. ("ATS") AND

THERMAL FORM & FUNCTION LLC ("TFF") (collectively "Plaintiffs") AND THEIR

ATTORNEYS: PLEASE TAKE NOTICE that pursuant to Federal Rule of Civil Procedure 56,

defendants Foxconn Electronics, Inc., Foxconn Technology Co., Ltd., Hon Hai Precision Industry

Co., (collectively "Defendants") respectfully move for Summary Judgment of Invalidity of

Claims 1, 2, and 7-9 of U.S. Patent No.5,494,098 (the "'098 Patent"), Summary Judgment of

Noninfringement of claims 1, 2, and 7-9 of the '098 Patent, and Partial Summary Judgment that

Plaintiffs are not Entitled to Lost Profit Damages. This motion is based upon this Notice and

Memorandum of Points and Authorities, the supporting Declarations and exhibits thereto, and all

pleadings and materials on file herein.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

With fact discovery complete and expert reports submitted, Plaintiffs have failed

to substantiate their case against Defendants. The '098 Patent does not represent a pioneering

invention; indeed, all of the limitations in the claims of the '098 Patent asserted in this litigation

are either explicitly disclosed or rendered obvious by the prior art. In keeping with the narrow (if

any) inventive scope of the '098 Patent, a comparison of the claims to the accused products

demonstrates several key limitations are not present in the products at issue. Finally, because of

the competitive market for heat sinks and the wide variety of designs, Plaintiffs cannot establish

they are entitled to lost profits. As explained more fully below, Defendants now ask the Court to

enter summary judgment on these issues.

**LEGAL STANDARD**

The moving party is entitled to summary judgment if "the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby*, Inc., 477

U.S. 242, 247-48 (1986).

A determination of infringement of a utility patent requires a two-step analysis. "First, the court determines the scope and meaning of the patent claims asserted ... [and second,] the properly construed claims are compared to the allegedly infringing device." Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1454 (Fed. Cir. 1998) (en banc) (citations omitted). Summary judgment of noninfringement is appropriate "where a patent owner's proof is deficient in meeting an essential part of the legal standard for infringement, because such failure will render all other facts immaterial." Techsearch L.L.C. v. Intel Corp., 286 F.3d 1360, 1369 (Fed. Cir. 2002). "Since the ultimate burden of proving infringement rests with the patentee, an accused infringer seeking summary judgment of noninfringement may meet its initial responsibility either by providing evidence that would preclude a finding of infringement, or by showing that the evidence on file fails to establish a material issue of fact essential to the patentee's case." Novartis Corp. v. Ben Venue Labs., 271 F.3d 1043, 1046 (Fed. Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)).

The Court can also grant summary judgment on invalidity, finding that a patent is anticipated by the prior art. Analysis of whether a patent is anticipated is also a two-step process. First, the claims of the patent are construed in the same manner as for an infringement analysis. Then, the properly construed claims are compared to the prior art. See In re Cruciferous Sprout Litigation, 301 F.3d 1343, 1346 (Fed. Cir. 2002). "In order to prove that a claim is anticipated under 35 U.S.C. § 102(b), defendants must present clear and convincing evidence that a single prior art reference discloses, either expressly or inherently, each limitation of the claim." Id. at 1349. Although anticipation is a question of fact, it still may be decided on summary judgment if no reasonable jury could find that the patent is not anticipated. See Telemac Cellular Corp. v. Topp Telecom, Inc., 247 F.3d 1316, 1327 (Fed. Cir. 2001).

Summary judgment is also appropriate for the issues of obviousness under 35 U.S.C. § 103. See, e.g., Beckson Marine, Inc. v. NFM, Inc., 292 F.3d 718, 723 (Fed. Cir. 2002) ("[A] district court properly may grant summary judgment on obviousness . . . when the underlying factual inquiries present no lingering genuine issues."). Defendants bear the burden of demonstrating that the patents are invalid. See Kegel Co. v. AMF Bowling, 127 F.3d 1420, 1429

(Fed. Cir. 1997).

## FACTUAL BACKGROUND

### A.    The '098 Patent

ATS has asserted claims 1, 2, 7, 8 and 9 of the '098 Patent. Although the asserted claims of the '098 Patent vary, each of them claims:

- a heat sink (12)
- with a base (or base wall) (18),
- a housing (14)
- with top (22) and side (24, 26) walls,
- fins (20) that extend from the base (or base wall) to the top wall, and
- an aperture (28) in the top wall with a fan (16) mounted over it.

Figures 1-3 of the '098 Patent are reproduced below.



The full text of the asserted claims is reproduced in Appendix A to this brief, along with a comparison to the relevant portions of the prior art.

### B.    The Accused Products

Plaintiffs' expert has only opined that the following models infringe the asserted claims of the '098 patent: 32P4001/32P4002, 32P4003/32P4004, 01R3329/01R3330, 22P4369/22P4370, and 23K4713/23K4714.[1] *See* Moffat Report at 40, Wied Decl. Ex. A. Defendants should be granted summary judgment that the remaining models for which it provided discovery, but on which Plaintiffs have not offered expert testimony, do not infringe the asserted

---

[1] Each of these products has two model numbers (e.g. 001 and 002) depending upon how they are sold. There are also a variety of part numbers (which begin with the prefix PKP) for some of these models.

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

1  claims.[2]  *See Novartis Corp. v. Ben Venue Labs.*, 271 F.3d 1043, 1050 (Fed. Cir. 2001) ("Under

2  modern summary judgment law, a patentee who fails to provide probative evidence of

3  infringement runs the risk of being peremptorily nonsuited.")  Moreover, Plaintiffs have not

4  identified any sales or offers for sale of 23K4713/23K4714 in the United States.  *See* Lynde

5  Report at Schedule 3B, Wied Decl. Ex. B.  Therefore, Defendants are entitled to summary

6  judgment of noninfringement with respect to that model.  *See Rotec Indus. v. Mitsubishi Corp.*,

7  215 F.3d 1246, 1251 (Fed. Cir., 2000) ("[T]he right conferred by a patent under our law is

8  confined to the United States and its territories....")

9        The only products that are still at issue, therefore, are 32P4001/32P4002 (the

10  "'001"), 32P4003/32P4004 (the "'003"), 01R3329/01R3330 (the "'329"), and 22P4369/22P4370

11  (the "'369").

12  **PLAINTIFFS ARE NOT ENTITLED TO LOST PROFITS**

13        To be entitled to lost profits, a patentee must show "a reasonable probability that

14  'but for' the infringing activity, the patentee would have made the infringer's sales."  *Crystal*

15  *Semiconductor Corp. v. Tritech Microelecs. Int'l, Inc.*, 246 F.3d 1336, 1353 (Fed. Cir. 2001).

16  "The Panduit and two-supplier market tests are recognized methods of showing 'but for'

17  causation."  *Micro Chemical, Inc. v. Lextron, Inc.*, 318 F.3d 1119, 1122 (Fed. Cir. 2003).  The

18  burden of satisfying these tests rests on the patentee.  *See Crystal Semiconductor Corp.*, 246 F.3d

19  at 1353.

20        Under the two-supplier test, a patentee must show that the relevant market contains

21  only two suppliers.  *See id.* at 1124.  By Plaintiffs' own admission, the relevant market contains

22  more than two suppliers; in fact,

23

24        Therefore, Plaintiffs are not entitled to lost profits under this test.

25        The Panduit test requires that the patentee show, *inter alia*, the absence of

26

27  [2] Defendants provided discovery on model numbers 8H180, 306EM, 410NP, 64HHP, 8C246,
28  9H010, 8F504, 7R769, 7P182, 5P573, 6F547, 5P573, 2E441, 9T642 215894-001, 215895-001,
   219115-001, 292325-001, 250044-001.

1 acceptable non-infringing substitutes. *See Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545

2 (Fed. Cir. 1995) (*en banc*). The only evidence offered for this proposition is the assertion that

3 IBM's design requirements would require the any potential supplier to infringe the '098 Patent.

4 *See* Lynde Report at 10. The facts demonstrate that no reasonable jury could credit this assertion.

5 First, Plaintiffs have admitted IBM's willingness to accept different designs.

6

7

8

9

10

11 Second, an acceptable substitute for the accused products has been established,

12 because IBM currently buys heat sinks from suppliers other than Foxconn. *See* Lynde Report at

13 10.

14

15

16 Third, other customers have shown a willingness to substitute noninfringing

17 products as alternatives for Plaintiffs' heat sinks.

18

19

20 This provides yet another example of noninfringing alternatives to Plaintiffs' products embodying

21 the '098 Patent.

22 Since Plaintiffs have not met their burden to show that they would have made any

23 sales "but for" the sale of the accused products, and because no reasonable jury could find that

24 Plaintiffs have satisfied either the *Panduit* or two-supplier market tests, Defendants ask that the

25 Court grant partial summary judgment that Plaintiffs are not entitled to lost profits.

26

27

28

**THE ASSERTED CLAIMS OF THE '098 PATENT ARE INVALID**

**A.     Claim 1 of the '098 Patent is Invalid**

**1.     Claim 1 is Anticipated by Yuan**

Taiwan Patent No. 186944 to Yuan ("Yuan") discloses a heatsink with a solid flat base, identified as item 30 in Figures 1 of Yuan, which is reproduced below.  *See* Yuan Patent, Wied Decl. Ex. C.  Figures 1-3 of Yuan, reproduced below, show a housing (20) with a top wall and side walls, first and second end openings, and an aperture (21) in the top wall spaced from the first and second end openings.  *See id*. at Fig. 1.  The housing is fixed relative to the solid flat base.  See id. at 6 ("[T]he separate bolts (12) screw in sequence to affix the holding piece (20) to the heat sink (30)….")  Yuan also discloses a plurality of parallel spaced fins (31) which are fixed to the base and extend to the top wall of the cover.  *See id.*



The fins form channels that extend from the first end opening to the second end opening and are open to the aperture.  A fan assembly (10) is fixed to the top wall above the aperture (21).  *See id.* at 6 and Figs. 1-3 ("[A] through hole (21) is formed in the center of said holding piece (20) corresponding to the fan (10) blowing outlet….")  These features of Yuan match the limitations of Claim 1, as summarized in Appendix A.  Yuan therefore discloses each of the limitations of

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

1  Claim 1 and Claim 1 is invalid under 35 U.S.C. §102.

2           **2.      Claim 1 is anticipated by Lee**

3           U.S. Patent No. 5,375,655 ("Lee") discloses a heatsink with "base plate means",

4  which is the solid flat base of claim 1. *See, e.g.*, Lee Patent at 2:28-37 and 9:30-31, Wied Decl.

5  Ex. D. Figure 7 of Lee shows a housing with a top wall and side walls, first and second end

6  openings, and an aperture in the top wall spaced from the first and second end openings. *See id.*

7  at 8:43-46 and Fig. 7. Lee also discloses a plurality of parallel spaced fins which are fixed to the

8  base and extend to the top wall of the cover. *See id.* at 2:28-37 and Figs. 2, 5-9.

9           The Court has construed the channels of the '098 Patent as "passages for air flow,

10  enclosed within the housing unit with vertical walls reaching at least to the point where only a

11  trivial or insignificant gap exists between the walls and the top wall of the housing." Claim

12  Construction Order at 7:13-17, Wied Decl. Ex. L. Figure 12 of Lee discloses an embodiment in

13  which the fins are continuous from one end opening to the other and therefore the channels

14  extend from one end opening to the other. Moreover, even when the fins are arranged as in

15  Figure 10, the channels are still enclosed within the housing unit with vertical walls reaching to

16  the top wall of the housing, and still extend from one end opening to the other. In the

17  embodiment of Figure 10, the portions of the channels which lie beneath the aperture are open to

18  it because of the offset arrangement of the fins. In the embodiment of Figure 12, at least half of

19  the channels have the portion beneath the aperture open to it because of the arch-like

20  configuration of the fins. *See* Lee Patent at 2:28-30 and Fig. 1.

21           Lee also discloses a fan assembly which is fixed to said top wall above the

22  aperture, even though it is not illustrated in the Figures. The specification of Lee discusses the

23  use of a fan in "forced fluid flow applications", *id.* at 5:67-6:3, and a configuration that "directs

24  fluid flow into the top opening and out the two sides of the apparatus." *Id.* at 8:43-46. Thus a fan

25  fixed to the top wall above the top opening is explicitly disclosed by Lee. The comparison of

26  each of these features to the limitations of Claim 1 is found in Appendix A.

27

28

**B.** **Claim 2 of the '098 Patent is Invalid**

    **1.** **Claim 2 is anticipated by Yuan**

As discussed above, all the limitations of Claim 1 are disclosed by Yuan.  Yuan also discloses that the fan housing is fixed to the top wall with mounting holes (11), has a top opening, and has a bottom opening at the aperture in housing (20).  *See* Yuan Patent at Fig. 1. The fan assembly disclosed in Yuan has a rotor rotatably mounted within the fan housing between the top and bottom openings and has at least one fan blade.  *See id.* at Figs. 1 and 3.  Claim 2 is therefore anticipated by Yuan, as summarized in Appendix A.

    **2.** **Claim 2 is anticipated by Lee**

As discussed above, all the limitations of Claim 1 are disclosed by Lee.  Although Lee does not describe the details of the fan, one of skill in the art would understand that an axial fan is at least one type of fan that could be used in the apparatus described by Lee.  Maltz Decl. ¶ 3; *see also* Yuan Patent.  An axial fan inherently has a fan housing with a top and bottom openings, and a rotor with at least one fan blade mounted within the housing.  *Id.*  Thus, the additional limitations of Claim 2 are inherently disclosed by the Lee Patent.  *See* Appx. A.

**C.** **Claim 7 of the '098 Patent is Invalid**

    **1.** **Claim 7 is anticipated or rendered obvious by Yuan**

The Yuan Patent discloses a heat sink with a flat base wall, identified as item 30 in Figures 1 and 2 of Yuan.  *See* Yuan Patent at 6 and Figs. 1-2.  The housing, parallel spaced fins, and fan assembly of Claim 7 are the same as those components in Claims 1 and 2, and the Court is referred to the discussion above of how each of those elements is disclosed by the Yuan Patent.

At a minimum, the fan blades disclosed in Yuan are spaced from the fins by the thickness of the top wall of the housing (20), and therefore the opening in the top wall of the housing is a space for the distribution of air.  *See* Yuan Patent at Fig. 2.  Alternatively, it would have been obvious to provide a plenum chamber in order to improve the performance of the fan. *See* Maltz Decl. ¶ 5.  An example of such a plenum chamber is shown in the 333100 Disclosure, which could have been easily combined with the apparatus of Yuan.  *See* 333100 Disclosure, Wied Decl. Ex. E ("There is an air pressure equalization zone 14 between the fan 11 and the fins

of the heat sink 13.") Thus Yuan discloses all of the limitations of Claim 7, as summarized in Appendix A.

### 2. Claim 7 is anticipated or rendered obvious by Lee

Lee discloses a "thick plate" and shows the flat base wall of Claim 7. *See* Lee Patent at 2:34-37 and Figs. 2, 5-9. The housing, parallel spaced fins, and fan assembly of Claim 7 are the same as those components in Claims 1 and 2, and the Court is referred to the discussion above of how each of those elements is disclosed by the Lee Patent.

Claim 7 also adds the limitation of the "fan blade being spaced from the fins so as to define a plenum chamber between said blade and said fins." *See* Appx. A. The Court has defined "plenum chamber" as "a space for the distribution of air." Claim Construction Order at 8:10. At a minimum, the fan blade is space from the fins by the thickness of the top wall of the housing, and therefore the opening in the top wall of the housing is a space for the distribution of air. *See* Lee Patent at 8:43-46 and Fig. 7. Alternatively, it would have been obvious to provide a plenum chamber in order to improve the performance of the fan. *See* Maltz Decl. ¶ 5. An example of such a plenum chamber is shown in the 333100 Disclosure, which could have been easily combined with the apparatus of Lee. *See* 333100 Disclosure, Wied Decl. Ex. E ("There is an air pressure equalization zone 14 between the fan 11 and the fins of the heat sink 13.") The comparison of each of these features to the limitations of Claim 7 is summarized in Appendix A.

### D. Claim 8 of the '098 Patent is Invalid

### 1. Claim 8 is rendered obvious by Yuan or Lee

As discussed above, all the limitations of Claim 7 are disclosed (or at least rendered obvious) by Yuan or Lee. The additional limitation of Claim 8, that the "fins which are directly below said aperture are below the level of said top wall and are vertically spaced from said aperture," would have been an obvious way of providing the plenum chamber. *See* Maltz Decl. ¶ 5. Moreover, it is explicitly disclosed in the 333100 Disclosure, which could have been easily combined with the apparatus of Yuan or Lee. *See* 333100 Disclosure, Wied Decl. Ex. E ("There is an air pressure equalization zone 14 between the fan 11 and the fins of the heat sink 13. This zone is created by placing the "leading" edge of each fin (that faces the pressure equalization

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

zone) some distance away from the fan.")  Claim 8 is therefore obvious in light of either Yuan or Lee on their own, or in combination with the 333100 Disclosure.  *See* Appx. A.

### E.    Claim 9 of the '098 Patent is Invalid

#### 1.    Claim 9 is rendered obvious by Tanaka

Japanese Patent 63-157994 to Tanaka ("Tanaka") discloses a heat exchanger with fins (4) and fans (13) on both sides of a divider plate (3).  *See* Tanaka Patent at p.1 and Fig. 2, Wied Decl. Ex. F.  One of ordinary skill in the art, however, would understand that one set of fins and fan acts as a heat source, with the divider plate and other set of fins and fan acting as a heat sink.  *See* Maltz Decl. ¶ 6; *see also* Tanaka Patent at p.4 ("[T]he heat retained in the clean air inside the cubicle (15) is transmitted to the outside air via the divider plate (3) and the ligulate fins (4A).")  Therefore, the divider plate (3) of Tanaka satisfies the "flat base wall" limitation of Claim 9.

Figure 8 of Tanaka shows a housing (21) with a top wall and side walls, first and second end openings, and an aperture (29) in the top wall spaced from the first and second end openings.  *See* Tanaka Patent at p.1-2 and Fig. 8.  The housing is fixed relative to the solid flat base with screws (27).  *See id*.  A fan assembly (28) is fixed to the top wall above the aperture (29).  *See id.* ("Intake fans (28) and (28) are positioned facing the intake holes (29) and (29) formed in the center of the inside cover (21) and the outside cover (22), respectively.")  Air is blown into the aperture and out of each of the end openings.  *See id.* at p.4 ("[T]he heated outside air that has instead taken this heat is dissipated to the outside from the openings at both ends of the outer fluid channel.")

Tanaka also discloses a plurality of parallel spaced fins which are fixed to the base and extend to the top wall of the cover.  *See id.* at p.4 and Figure 6.  The fins are a single continuous length of material, extending transversely, with upper ends connected to the upper end of an adjacent fin and lower ends connected to the lower end of a different adjacent fin.  *See id*.

The channels formed by the fins in Tanaka, which he describes as "multi-entry corrugated fins" are connected to the aperture through the openings in the side surfaces.  *See id.* From a manufacturing point of view, it is arbitrary as to whether those multiple entries are in side

surfaces or top surfaces.  *See* Maltz Decl. ¶7.  Moreover, one of ordinary skill in the art would have been motivated to make the entries in the top surfaces, as it would provide a better path for the air flow.  *See id.*  It would have been obvious, therefore, to modify Tanaka so that the fins which are vertically aligned with the aperture are unconnected at their upper ends to provide the multiple entries.  As shown above and summarized in Appendix A, all of the limitations of Claim 9 are disclosed or rendered obvious by Tanaka.

### 2.    Claim 9 is rendered obvious by Lee

The flat base wall and housing of Claim 9 are the same as those components in Claim 7, and the Court is referred to the discussion above of how each of those elements is disclosed by the Lee Patent.  The fan assembly of Claim 9 are the same as that component in Claim 1, and the Court is referred to the discussion above of how that element is disclosed by the Lee Patent.

Lee also discloses a plurality of parallel spaced fins which are fixed to the base and extend to the top wall of the cover.  *See id.* at 2:28-37 and Figs. 2, 5-9.  The fins are a single continuous length of material, extending transversely, with upper ends connected to the upper end of an adjacent fin and lower ends connected to the lower end of a different adjacent fin.  *See id*. at 7:31-35 and Figure 1.

Lee addresses the issue of making all of the channels connected to the aperture in the top wall by using multiple fins that are offset relative to the next.  *See id.* at 4:30-40 and Figure 2.  Lee also discloses, however, an arrangement in which the fins run the entire length of the heatsink and therefore cannot be offset.  *See id.* at 6:41-45 and Figure 12.  In that embodiment, it would have been obvious to have the fins beneath the aperture unconnected at their upper ends in order to allow the air stream to make contact with all of the finned surfaces.  *See* Maltz Decl. ¶ 4.  Lee therefore discloses or renders obvious all of the limitations of Claim 9, *see* Appx. A, and Claim 9 is invalid under 35 U.S.C. §103.

### THE ACCUSED PRODUCTS DO NOT INFRINGE THE ASSERTED CLAIMS

### A.    The Accused Products do not have a Housing Fixed to the Base

Independent Claims 1, 7, and 9 all require a housing which is fixed relative to the

base wall.[3]  *See* Appendix A.  The '098 Patent not only describes the housing as being fixed relative to the base, but also the fins as being fixed to the base and the fan assembly being fixed to the top wall.  *See* '098 Patent at 4:46-47 and 4:54-55.  To be consistent in the ordinary meaning and the other uses of the term "fixed" in the '098 Patent, the housing must be "set firmly in position: stationary."  *See* Webster's II New College Dictionary (2001), Wied Decl. Ex. G.

In the accused products the shroud is not fixed to the base.  Instead, the shroud has four tabs that are bent under the base.  *See* Moffat Report at 36, Wied Decl. Ex. A ("In each of the Defendants' accused heat sinks, the housing is connected to the base by four small tabs projecting from the housing side walls.  These tabs are bent and hooked under the base.")  As demonstrated by Plaintiffs' own expert, the tabs can be easily straightened to allow the shroud to be moved. *See id.*  Moreover, even when the tabs are bent, there may be play between the shroud and the base, allowing for some movement and showing the shroud is not fixed relative to the base.  *See* Maltz Decl. ¶8.

Because the shroud in the accused products is not fixed relative to the base the accused products do not infringe Claims 1 and 7, and thus they cannot infringe Claims 2 or 8.  *See Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1553 (Fed. Cir. 1989) ("[I]t is axiomatic that dependent claims cannot be found infringed unless the claims from which they depend have been found to be infringed.")  Defendants should therefore be granted summary judgment that the heat sink products at issue do not infringe any of the asserted claims of the '098 Patent.

## B. The Accused Products do not have a Housing with Side Walls

Independent Claims 1, 7, and 9 all require the housing to have side walls which extend from the base wall to the top wall.[4]  In the accused products, the shroud has four members, one at each corner, that hold the top wall at a distance from the base.  *See* Wied Decl. Exs. H-K. These members do not constitute sidewalls, in the same fashion that a doorway does not constitute a wall.  A photo of the shroud from the '329 heat sink amply demonstrates this fact.

---

[3] Claim 1 refers to the "base" rather than the "base wall".  This difference does not affect the noninfringement analysis.
[4] Claim 1 refers to the "base" rather than the "base wall".  This difference does not affect the noninfringement analysis.

Member

Moreover, the Court has construed "housing" to be "an enclosure located over the fins of the heat sink." Claim Construction Order at 5:15-16. The shrouds in the accused products do not enclose the fins of the heat sink because of the opening between the four members. Again, the picture above and the technical drawings clearly demonstrate that the shroud in the accused products is not an enclosure over the fins of the heat sink, but simply a structure for securing the fan. Because the accused products do not contain this limitation of the asserted independent claims, the Defendants should be granted summary judgment that the heat sink products at issue do not infringe any of the asserted claims of the '098 Patent.

**C.**      **Heatsink Models '003, '329 and '369 do not have Fins Extending from the Base to the Top Wall**

Independent Claims 1, 7, and 9 all require fins that extend from the base to the top wall. *See* Appx. A. The Court has construed this to require that they project towards the top wall and reach to at least the point at which only a "trivial or insignificant gap" exists between the fins and the top wall. *See* Claim Construction Order at 7:1-3, Wied Decl. Ex. L.

The folded fins in the accused products are roughly "U" shaped, with end portions that extend about 4mm higher than the remainder of the fin. *See* Wied Decl. Exs. H-K. In the assembled '003, '329, and '369 heat sinks, spacers maintain a gap between the top wall and the top of the fins. *See* Wied Decl. Ex. H-J. The gap between the top wall and the end portions of

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

the fins is 1.56mm; the gap between the top wall and most of the length of the fins is approximately 5.5mm. *See id.*

No reasonable jury could find the 1.56mm gap in the '003, '329, and '369 heat sinks to be trivial or insignificant. As Plaintiffs' expert explained during the claim construction process, mass produced parts need to have some tolerance, in recognition of the limitations of manufacturing processes. *See* Moffat Decl. at ¶28, Wied Decl. Ex. N. Because heat sinks are sold in an extremely competitive market, manufacturing tolerances need to be as generous as possible to keep manufacturing costs down, "provided that the increased tolerances must not defeat the purpose of the device." *Id.* This suggests that the manufacturing tolerance of the fin height represents "as close to the top wall as is reasonable from a manufacturing costs standpoint," *see id.* at ¶30, and that anything larger must be significant; if it were insignificant or trivial, the manufacturer could decrease costs by making the tolerance even larger.

In manufacturing the accused products, the height of the fins has a manufacturing tolerance of .25mm. *See* Wied Decl. Exs. H-K. Thus, even if it were desirable for the fins to make contact with the top wall, a gap of up to .25mm would be considered acceptable. The gap in the '003, '329, and '369 heat sinks represents 6 times this amount at the end portions of the fins, and more than 20 times this amount for most of the length of the fins. *See id.* No reasonable jury could find that the gap in the '003, '329, and '369 heat sinks, 6 to 20 times the gap acceptable from manufacturing tolerances, could be considered trivial or insignificant, and therefore the Defendants should be granted summary judgment that these products do not infringe the asserted claims of the '098 Patent.

**D.** **Heatsink Models '003, '329 and '369 do not have the Claimed Channels**

Independent Claims 1, 7, and 9 all require a plurality of channels defined by the fins, the base (or base wall), and the top wall. *See* Appx. A. The Court, in its Claim Construction Order, adopted Defendants' argument that:

> the applicant specifically stated when prosecuting the patent that the invention "maintain[s] the channels between the fins enclosed except for the end opening." Thus, the channels must be enclosed. As previously discussed, though, plaintiffs are also correct that the claim language and prosecution history does not require the fins to

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

> actually touch the top wall of the enclosure and thus seal off the tops of the channels – as long as the gap between the fins and the top wall remains trivial or relatively insignificant.

Claim Construction Order at 7:9-13. For this reason, the Court construed "channels" to be "passages for air flow, enclosed within the housing unit with vertical walls reaching at least to the point where only a trivial or insignificant gap exists between the walls and the top wall of the housing." *Id.* at 7:15-17.

The width between the channels in the accused products (i.e. the gap between each fin and the adjacent fin) is typically about 1.55mm, as shown in the drawing of the '003 heat sink reproduced below. *See, e.g.,* Wied Decl. Ex. H. This, of course, is almost exactly the same as the 1.56mm distance that is the closest the fins ever come to the top wall. *See id.*



Since the 1.55mm gap between the fins is sufficient to allow airflow, this distance must be significant and nontrivial. The fins are always at least that distance from the top wall (and are, for most of their length, almost 4 times that distance from the top wall), therefore the passages between the fins are not "channels" as construed by the Court. Since each of the independent claims contains this limitation, Defendants should be granted summary judgment that the '003, '329 and '369 models do not infringe the asserted claims.

1    **E.      The Accused Products do not have Continuous Fins**

2           Claim 9 requires that the fins be "a single continuous length of material which

3    extends transversely of said channels."  The parties have agreed that "single continuous length of

4    material" should be construed as an "unbroken strip of material."  *See, e.g.*, Moffat Report at 20,

5    Wied Decl. Ex. A.

6           The fins of the accused products, however, are not an unbroken strip of material.

7    On the contrary, the material from which the fins in the accused products are constructed have

8    numerous breaks in the material which, when the strip of material is folded, provide the "U"

9    shape of the fins in the assembled heat sink.  *See, e.g.*, Wied Decl. Exs. H-K.  Because the

10   accused products do not satisfy this limitation of Claim 9, Defendants are entitled to summary

11   judgment of noninfringement of Claim 9.

12

13   **CONCLUSION**

14          For the reasons stated above, Defendants respectfully request that the Court grant

15   summary judgment that Claims 1, 2, and 7-9 of the '098 Patent are invalid, that none of the

16   Foxconn products at issue infringe Claims 1, 2, or 7-9 of the '098 Patent, and that Plaintiffs are

17   not entitled to lost profits.

18

19   DATED: January 28, 2005            ALSCHULER GROSSMAN STEIN & KAHAN LLP

20

21                                     By /s/ Peter J. Wied
                                          ─────────────────────────────
22                                         PETER J. WIED
                                           Attorneys for Defendants
23                                         FOXCONN ELECTRONICS, INC., FOXCONN
                                           TECHNOLOGY CO., LTD., AND HON HAI
                                           PRECISION INDUSTRY CO., LTD

24

25

26

27

28